## MULLEN v. CANFIELD et al.

### No. 7182.

United States Court of Appeals for the District of Columbia.

April 3, 1939.

William E. Leahy and James F. Reilly both of Washington, D. C., for plaintiff in error.

William A. Gallagher, George Monk, and Austin F. Canfield, all of Washington, D. C., for defendants in error.

Before GRONER, Chief Justice and STEPHENS and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

Petitioner is a member of the bar of the District Court of the United States for the District of Columbia. Respondents are the members of a Committee on Grievances of the Police Court of the District of Columbia. In proceedings instituted by the committee in the Police Court, petitioner was required to appear before that court and show cause why he should not be held in contempt "or" why he should not be suspended from practicing before that court. After a hearing, the court found him guilty of soliciting one Stasch to retain his services in a case before it, and of "professional misconduct prejudicial to the administration of justice" in so doing. No finding was made in regard to contempt. The Police Court suspended petitioner from practicing before it for six months. The case is here on writ of error.

The Code of the District of Columbia gives to the District Court of the United States for the District of Columbia authority to admit persons to "its bar" (Tit. 18, § 52) and to censure, suspend or expel members of "its bar" (§ 53), and regulates disbarment proceedings in that court. (§ 55). With respect to the Police Court, there is no corresponding legislation. The Police Court is an "inferior court"[1] of "limited jurisdiction."[2] It has original jurisdiction concurrently with the District Court, except as otherwise provided, "of all crimes and offenses committed in the said District not capital or otherwise infamous and not punishable by imprisonment in the penitentiary, except libel, conspiracy, and violation of the post-office and pension laws of the United States; and also of all offenses against municipal ordinances and regulations in force in the District of Columbia."[3] It is empowered by statute to make rules for the apportionment of business among its judges (§ 151); to examine, commit, or hold to bail (§ 152); to issue process for arrest; and "to punish contempts by fine not exceeding twenty dollars and imprisonment for not more than forty-eight hours, or either, and to enforce any of its judgments by fine or imprisonment, or both, and to make such rules and regu-

---

[1] D.C.Code, Tit. 18, § 1.
[2] United States v. Mills, 11 App.D.C. 500, 507.

[3] D.C.Code, Tit. 18, § 152.

lations as may be deemed necessary and proper for conducting business in said court." (§ 155.) It has adopted a rule which provides that "the unprofessional solicitation or procurement of services in any case in this Court * * * shall be cause for the suspension or removing of any attorney from practice before this court." Its rules also provide for a committee on grievances, and for the hearing of charges. These rules were complied with in the proceedings which led to the petitioner's suspension.

It is unquestioned (1) that when the District Court of the United States for the District of Columbia admits an applicant to its bar he becomes entitled to practice in the Police Court and the other inferior courts of the District; (2) that the Police Court has no power to admit persons to practice before it; and (3) that when the District Court suspends or expels a member of its bar he loses his right to practice in the Police Court. Apart from authority, a fairly obvious corollary would seem to be that (4) the Police Court has no power to suspend persons from practice before it. A contrary doctrine would destroy the coherence of the system. We know of no reason of policy and no principle of common law or of statutory construction which suggests that the Police Court, though obliged to accept all members of the District Court bar at the time of their admission, may afterwards exclude some of them. A confused and anomalous situation results if an attorney may be "disbarred in an inferior court and still have his license unrevoked as to all the superior courts." State ex rel. Jones v. Laughlin, 73 Mo. 442, 450. On the other hand, if he is disbarred or suspended under the provisions of the statute he is excluded from practice not only in the District Court, where the statutory proceedings are held, but in the inferior courts as well.

■■ Unless a contrary legislative intent appears, a court which may admit attorneys may suspend or expel them.[4] Where no contrary intent appears it has been held that courts of superior or general jurisdiction, even when they have no power to admit, have some inherent power to suspend or expel.[5] But the general rule seems to be that an inferior court of limited jurisdiction, without power to admit, cannot suspend or expel. Control over the privilege of practice before an inferior court is usually lodged elsewhere. A justice of the peace in California has no power to suspend an attorney from practice in his court. Baird v. Justice's Court of Riverside Tp., 11 Cal.App. 439, 105 P. 259. A Municipal Court in New York, though it may adjudge an attorney in contempt for misconduct in its presence, "cannot be supposed to have any power to discipline attorneys for general misconduct or for violation of the canons of ethics." Bloomingdale Bros., Inc., v. Hudson, 147 Misc. 759, 264 N.Y.S. 639, 641. The Criminal Court of St. Louis being, like the Police Court here, a court of inferior and limited jurisdiction, without power to license attorneys, has no power to disbar them from practice before it; especially as the legislature has expressly recognized the power of other courts to disbar. State ex rel. Jones v. Laughlin, 73 Mo. 443. And a board of county commissioners having "limited judicial powers," including the power to punish for contempt, has no power to suspend from practice in its own forum; admission, exclusion and suspension of attorneys "can only be performed by courts possessing a general jurisdiction, either original or appellate." Garrigus v. State, 93 Ind. 239, 242.

---

[4] The power to disbar "is possessed by all courts which have authority to admit attorneys to practice." Ex parte Robinson, 19 Wall. 505, 86 U.S. 505, 512, 22 L.Ed. 205. Beene v. State, 22 Ark. 149, 156; Commonwealth v. Richie, 114 Ky. 366, 70 S.W. 1054; cf. People v. Justices of the Delaware Common Pleas, 1 Johns.Cas., N.Y., 181.

[5] The St. Louis Court of Appeals has inherent power to disbar, although the Supreme Court of Missouri is the only court in the state which has power to license attorneys to practice. State ex rel. Selleck v. Reynolds, 252 Mo. 369, 158 S.W. 671; In re Richards, 333 Mo. 907,

63 S.W.2d 672. A Nebraska district court of general jurisdiction has inherent power to suspend an attorney from practice in its judicial district, Dysart v. Yeiser, 110 Neb. 65, 192 N.W. 953, affirmed Yeiser v. Dysart, 267 U.S. 540, 45 S.Ct. 399, 69 L.Ed. 775; although it has no power over admissions and consequently its power of suspension is limited to its own district. In re Newby, 76 Neb. 482, 107 N.W. 850. A Florida county court, being a court of record with "considerable jurisdiction," may disbar from practice before it, although it cannot admit to practice. State v. Kirke, 12 Fla. 278, 286, 95 Am.Dec. 314. Cf. Bryant's Case, 24 N.H. 149, 5 Foster 149.

Broad statements in judicial opinions to the effect that courts, or courts of record, have inherent power to exclude attorneys should be understood, we think, as referring to courts of general jurisdiction.[6] The Supreme Court said in 1824, with respect to suspension, that "The power is * * * we think, incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." Ex parte Burr, 9 Wheat. 529, 22 U.S. 529, 531, 6 L.Ed. 152. But the Court was dealing with the power of the Circuit Court for the District of Columbia. So in 1835 the General Court of Virginia said: "It would seem, then, that independently of any statutory restriction, the courts of record of this commonwealth might, in a proper case, suspend or annul the licence of an attorney, so far as it authorizes him to practice in the particular court, which pronounced the sentence, but no farther." Ex parte Fisher, 6 Leigh, Va., 619, 624. But the court was speaking of the "circuit superiour court of Jackson."

The power to suspend or disbar is "distinct from the power to punish for contempt; though it is frequently the case, that the causes for removal from the bar may also present ground for punishment as for contempt." In re Adriaans, 17 App.D.C. 39, 46. As the present petitioner was not adjudged in contempt, the question of suspension as a punishment for contempt is not involved. That question was involved in United States ex rel. Alward v. Latimer, 44 App.D.C. 81. There the petitioner, a member of the bar, had been ordered by the Juvenile Court to show cause why he should not be adjudged in contempt of that court, and suspended from practice before it, for abetting a defendant in evading trial. The Supreme Court of the District, now the District Court, quashed a writ of certiorari to the Juvenile Court; and this court affirmed that judgment. This court said: "The question is: Was the juvenile court without jurisdiction to punish for contempt? * * * The power to suspend from practice in that court is one that is within its

sound discretion. * * * We think that the court would be authorized to suspend an attorney from practice before that court in a case where he has aided and abetted a prisoner in evading a trial." 44 App.D.C. 81, 84. The theory of the decision apparently was that suspension might be imposed as a punishment for contempt, although the court's language goes further and seems to recognize some general power of suspension. Since the Juvenile Court was authorized, as the Police Court is authorized, only to "punish contempts by fine not exceeding twenty dollars and imprisonment for not more than forty-eight hours, or either,"[7] we think that case was wrongly decided. The Supreme Court has held that even a District Court of the United States, with authority to admit attorneys and, after proper proceedings, to disbar them, cannot disbar them in the exercise of its power to punish for contempt when a statute expressly authorizes other punishments for that offense. The Court said: "The * * Judiciary Act of 1789, * * * declares that the court shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment." Ex parte Robinson, 19 Wall. 505, 86 U.S. 505, 512, 22 L.Ed. 205.

We find it unnecessary to consider whether the evidence supported the charge of solicitation, or whether a single solicitation justifies suspension, for we conclude that the Police Court has no power of suspension. If a lawyer's conduct in connection with the Police Court is thought to call for suspension, complaint should be made to the District Court. It is only fair to the Police Court and the respondents to say that if they have erred in this respect the responsibility is not theirs but that of this court, since they properly relied upon its broad language in the Alward case.

Reversed.

---

[6] Cf. 5 Am.Jur., Attorneys at Law, § 251.

[7] 34 Stat. 76, c. 960, § 17; D.C.Code, Tit. 18, § 267.